# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| NANCY STANINA, | Civil No. 04-3804 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| | **AND ORDER** |
| BLANDIN PAPER COMPANY, UPM-KYMMENE INC. d/b/a UPM-KYMMENE BLANDIN PAPER COMPANY, | |
| Defendants. | |

John A. Klassen, **JOHN A. KLASSEN, PA**, 10 South Fifth Street, Suite 700, Minneapolis, MN 55402; and Lisa C. Stratton, **STRATTON LAW OFFICE**, 842 Raymond Avenue, Suite 200, Saint Paul, MN 55114, for plaintiff.

Jodie F. Friedman and Donald W. Selzer, Jr., **LITTLER MENDELSON, PC**, 1300 IDS Center, 80 South Eighth Street, Minneapolis, MN, for defendants.

Plaintiff Nancy Stanina ("Stanina") asserts claims of gender discrimination, hostile work environment, and unlawful retaliation, under Title VII and the Minnesota Human Rights Act ("MHRA"), against her current employer, defendants Blandin Paper Company and UPM-Kymmene, Inc. (collectively referred to as "Blandin").[1] Blandin seeks

---

[1] In October 1997, UPM Kymmene acquired Blandin Paper Company and the plant became known as UPM Blandin Paper Company.

summary judgment on all of Stanina's claims, and moves to strike declarations filed by Stanina.[2]  For the reasons explained below, the Court denies the motions.

## BACKGROUND

Blandin manufactures and sells coated paper in Grand Rapids, Minnesota.  Prior to a partial closure of Blandin's paper mill in January 2003, the mill employed roughly 800 people.  In addition to the paper mill, Blandin's grounds also contain rail track to facilitate shipments in and out of the mill, and yard areas where wood is stockpiled for use in the papermaking process.

Stanina began working for Blandin in 1991 in the mill, and began working in the Yard area as a "Utility" worker in 1995.  Jobs in the Yard area involve using heavy machinery to move logs, and generally pay better than other positions in the mill. Stanina was the first woman to work in the Yard.

Stanina alleges that a pattern of discrimination and harassment based on gender began when she started working in the Yard.  Terry Hanson was Stanina's first crew leader in the Yard, from 1995 to 1999.  Hanson treated Stanina differently from her male co-workers.  Hanson refused to assign her certain jobs, such as crane-operator, telling her that she was a woman and could not handle the work.  Rather than assign Stanina to run the cranes for the day, as she was entitled by seniority, Hanson would call a male employee in on his day off.  Stanina asserts that other co-workers made similarly sexist

---

[2]  The parties also filed a joint motion to submit memoranda in excess of 12,000 words and to extend the briefing schedule for the motion for summary judgment.  *See* Docket No. 24. Given the long-term and complex factual background of the case, and given that a holiday fell within the briefing schedule, the Court grants the motion.

remarks that Stanina should not be allowed to work as a crane-operator because she was a woman.

Later, when one of Stanina's male co-workers confronted Hanson about how Hanson treated her, Hanson began referring to Stanina as the co-worker's "work wife" and asking him "how the sex was."  Other men thought it was funny and continued to say it.  Stanina also alleges that male employees began a practice of starting rumors that she was having an affair with her male co-workers whenever one of her male co-workers was nice to her.

Stanina claims that she was subject to sexually inappropriate touching by her co-worker Dick Bishop.  On her first day working in the Yard, Bishop placed his hand underneath Stanina when she attempted to sit down in a chair.  Bishop continued to touch her inappropriately, and since that initial incident, has repeatedly grabbed Stanina's breasts and buttocks.  Stanina also asserts that Bishop would intentionally swing the crane boom at her, causing her to fear physical injury.  Some of her male co-workers engaged in more egregious conduct, such as throwing lit fireworks under the bathroom while Stanina was using it.  Bishop continues to work at Blandin, and Stanina alleges that he continues to touch her in a sexually inappropriate manner.

When Stanina began working in the Yard, there was only a single unisex bathroom, and the closest women's bathroom was outside the Yard area.  When Stanina left the Yard area to use the women's bathroom, she claims that she was criticized for being out of her area.  Also, Blandin initially refused to provide Stanina with appropriate-fitting coveralls, and she was forced to wear coveralls that were several sizes too big,

which created a safety hazard.   Additionally, Stanina claims that pornography was displayed at several places within Blandin.

In 1997, a new building was completed in the Yard with indoor men's and women's bathrooms.  The men's bathroom contained lockers, and there were additional lockers just outside the men's bathroom.  Blandin assigned lockers to all male Yard employees who wanted them.  Blandin did not install any lockers in the women's room, and did not assign Stanina a locker, although she requested one.  In addition, Stanina alleges that her male co-workers would frequently turn up the thermostat in the women's restroom to make the temperature uncomfortably hot.   Stanina claims that she complained to Hanson, but he did not respond.  Pornography continues to be displayed at Blandin through the present day.

In July 1999, Hanson retired and Gary Forbord became the next Crew Leader. Stanina alleges that Forbord continued Hanson's practice of depriving Stanina of the higher-paying crane shifts by juggling the schedule to call a male employee in on their day off to work.   Stanina also renewed her complaints about the locker and the thermostat, but Forbord did nothing.

At the end of December 1999, Bill Neary took over the Crew Leader position. Stanina continued to request a locker and to be assigned to work the crane shifts, but Neary did not provide her with a locker, and he did not assign her to the crane shifts she requested.   Further, Stanina alleges that Neary made sexist comments, denigrating Stanina's ability to do her job because she was a woman, and that her co-workers also

continued to make sexist comments under Neary, as they had when Hanson was Crew Leader.

Stanina's work environment further deteriorated in 2000, when she reported that another one of her male co-workers, Mike Loscheider, physically threatened her, and threw and hit her with a salt shaker in the lunch room.  Since that time, several of Stanina's male co-workers refused to work with her.  For example, two of her co-workers refused to load her truck, but they loaded a male coworker's truck.  At the end of the day, they falsely reported to the crew leader that Stanina had slept all day.  Stanina complained about their conduct and the false report to Neary, but one of the co-workers continued to refuse to load her truck.  In addition, many of Stanina's male co-workers refused to let her ride in the pickup that they used to drive to the various work sites around the Yard, even in cold weather.  At least two of Stanina's male co-workers repeatedly left her behind, even though they did not do that to any of her male coworkers.

Blandin contends that Stanina's male co-workers left her behind not because she was a woman, but because they were friends with Loscheider and did not like the way Stanina had treated him.

In the Fall of 2000, Blandin sold its "Powerhouse" facility in Grand Rapids and began a "move-back" to fill its remaining positions with its most senior employees. Blandin moved many workers back into the mill.  During the move-back, all U-1 jobs were re-posted for mill-wide seniority posting.  Stanina's assignment to the Yard was temporarily extended, however, so she could train more senior workers taking over the jobs in the Yard and operate the cranes until they could be trained.  Stanina asserts that

Neary's harassment increased during this time; he made comments about Stanina being a "typical dumb broad" or "dumb woman."   When Stanina asked Neary to stop, he allegedly told her it would not matter because she would not be working there much longer.

In February or March of 2001, Stanina moved back into the mill as a U-1 in the finishing room.   Stanina alleges that she was moved back into the mill despite the fact that, at that time, there were so few trained and qualified crane operators in the Yard that they were working in excess of the time allowed by Department of Transportation regulations.   In October 2001, Stanina posted back into the Woodroom/Yard as a U-1. Sam Storrs, the salaried, nonunion supervisor, told her that some of the people in the Yard did not want her out there.   Storrs also allegedly provided Stanina with less training for the Woodroom than her male co-workers.

One of the mechanics in the Yard, Dean Danielson, was one of the male employees most hostile toward Stanina.   There were many instances between 1994 and the present in which he refused to repair equipment, delayed repairs when she needed the equipment, and ridiculed her for common mistakes.   Danielson's repair delays caused Stanina to work overtime and made it appear she could not do her job.   Stanina also alleges that Danielson made sexist remarks, for example, that he did not want to be trained by a woman.   Blandin responds that Danielson's treatment of Stanina was not based on her gender, but was rather a manifestation of his "difficult and abrasive" personality.

In May 2002, Stanina filed a Charge of Discrimination with the EEOC based on this ten-year pattern of sex discrimination, harassment, and retaliation at Blandin. In January 2003, Stanina was laid off during a plant-wide layoff. As part of the layoff, Blandin negotiated with the union and paid a standard severance based on years of service to all laid-off employees as settlement of their potential Worker Adjustment Retraining and Notification Act claims. Stanina's severance payment would have been approximately $11,000. Blandin refused to negotiate an exception to the general release for Stanina's pending EEOC charge, which forced Stanina to choose between losing the $11,000 payment or giving up her EEOC charge that had been pending for a year.

In the Summer of 2003, Stanina learned that Blandin was recalling less senior employees and skipping over her, despite her more senior status, in violation of the collective bargaining agreement. After discovering less senior men had been recalled, Stanina, through the union, communicated repeatedly with Blandin about its failure to recall her. Finally, on September 7, 2004, Stanina filed a grievance, and the next day, Blandin admitted it had recalled a less senior male worker a few days earlier and that it had no explanation for recalling him instead of Stanina. Blandin offered Stanina a temporary position, which she accepted.

Upon her return to work, Stanina discovered Blandin had recalled eight men less senior to her throughout the previous year while the union had been sending its inquiry letters on her behalf. On September 15, 2004, Stanina filed a union grievance over Blandin's failure to recall her for those positions. None of the eight men who had been recalled had filed a claim of harassment or discrimination against Blandin.

- 7 -

On June 4, 2004, the EEOC issued Stanina a Right to Sue letter, and she filed the instant lawsuit on August 16, 2004. Blandin moves for summary judgment on Stanina's claims.

## ANALYSIS

### I.     Summary Judgment Standard

Summary judgment is appropriate in the absence of any genuine issue of material fact, and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view all of the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *See*, *e.g.*, *Anderson*, 477 U.S. at 256; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995); *Ring v. Sears, Roebuck & Co.*, 250 F. Supp. 2d 1130, 1138 (D. Minn. 2003).

### II.     Hostile Work Environment

To prevail on a claim of a coworker-created sexually hostile work environment under Title VII and the MHRA, a plaintiff must show that: (1) she belongs to a protected

group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action.  *See Dhyne v. Meiners Thriftway*, 184 F.3d 983, 987 (8th Cir. 1999); *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 888 n.4 (8th Cir. 1998);.

Blandin makes four arguments in support of its motion for summary judgment on Stanina's hostile work environment claim.  First, Blandin argues that Stanina's hostile work environment claim is time-barred under the statute.  The timely filing provision requires that a Title VII plaintiff file a charge within 300 days after the unlawful employment practice happened.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  Under Title VII, a hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice."  42 U.S.C. § 2000e-5(e)(1).  In determining whether there is a hostile work environment, the Court views the "totality of the circumstances" including instances of harassing conduct that occur outside the statutory time period.  *See Baker v. John Morrell & Co.*, 382 F.3d 816, 828-29 (8th Cir. 2004); *Morgan*, 536 U.S. at 115.  "It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that *an act* contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Morgan*, 536 U.S. at 115 (emphasis added).

Here, although many of the alleged acts occurred long before Stanina filed her EEOC charge, some of the acts are alleged to have occurred shortly before she filed her charge, including Bishop's sexually inappropriate touching of Stanina, Danielson's sexist comments and refusal to work with Stanina, and Neary's sexist comments and scheduling decisions.  Because Stanina filed her charge within 300 days of at least one of the alleged acts that created the hostile work environment, her hostile work environment claim is timely.  *Id.* at 117.

Second, Blandin argues that, even if her claim is timely under the statute, Stanina's hostile work environment claim should be barred by the doctrine of laches. The doctrine of laches  involves a determination of "whether there has been such an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant the relief prayed for."  *Klapmeier v. Town of Center of Crow Wing*, 346 N.W.2d 133, 137 (Minn. 1984).  However, "when a plaintiff brings a federal statutory claim seeking legal relief, laches cannot bar that claim, at least where the statute contains an express limitations period within which the action is timely."  *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 260 (2d Cir. 1997) (rejecting laches argument in civil rights case); *Chanval Pellier v. British Airways, Plc.*, 2006 WL 132073, at *7 (E.D.N.Y. Jan. 17, 2006) (same).  Because Title VII establishes a clear limitations period, and because plaintiff's hostile work environment claim was timely filed, laches does not bar her claim.

Third, Blandin argues that Stanina's hostile work environment claim fails because her allegations do not rise to the level of "severe or pervasive" under *Duncan v. General*

*Motors Corp.*, 300 F.3d 928 (8th Cir. 2002) and *Alagna v. Smithville R-II School District*, 324 F.3d 975, 980-81 (8th Cir. 2003).  Those cases, however, involved very different facts from those alleged here, and are therefore distinguishable from the instant case.  In *Duncan*, the plaintiff's examples of harassing conduct were limited to a single request for a romantic relationship, a few isolated incidents where the alleged harasser briefly touched the plaintiff's hand, and mild, if somewhat crass, teasing.  *Duncan*, 300 F.3d at 932-34.  Similarly, in *Alagna*, the plaintiff alleged only two occasions of brief touching of her arm by the alleged harasser, and non-threatening, although irritating, conduct such as asking her about her marital problems, giving her romance novels, and telling her how much he loved her.

In contrast to *Duncan* and *Alagna*, which involved mild teasing and rare instances of non-sexual touching, the acts alleged by Stanina are similar to those addressed in *Eich v. Board of Regents for Central Missouri State University*, 350 F.3d 752 (8th Cir. 2004) and *Baker v. John Morrell & Co.*, 382 F.3d 816, 828-29 (8th Cir. 2004), where the Eighth Circuit determined that the alleged conduct was sufficiently "severe or pervasive" to state a hostile work environment claim.  In *Eich*, the plaintiff alleged that over a seven-year period, the defendant's workers engaged in acts of repeated physical touching, sexual comments, sexual jokes, and sexual rumor-mongering.  350 F.3d at 755-57.  Similarly, in *Baker*, the plaintiff alleged that a coworker engaged in sexually inappropriate touching, made sexual comments and jokes, and started rumors about the plaintiff's sex life.  382 F.3d at 828-29.

Here, Stanina has alleged that employees at Blandin touched and grabbed her breasts and buttocks, started rumors about Stanina's sexual relations with co-workers, made comments disparaging women to Stanina, displayed pornography, and physically threatened her.  These allegations are similar to the allegations made by the plaintiffs in *Eich* and *Baker*.  Viewing the facts in the light most favorable to Stanina, as the Court must on Blandin's motion for summary judgment, the Court finds that Stanina has alleged conduct by coworkers that is sufficiently "severe or pervasive" to set forth a hostile work environment claim.  Therefore, the Court denies Blandin's motion for summary judgment on this ground.

Fourth, Blandin argues that certain acts alleged by Stanina should be excluded from her hostile work environment claim, because she did not specifically include them in her EEOC charge or complaint.  A Title VII plaintiff is not, however, required to include every single instance of harassing conduct comprising a hostile work environment claim in an EEOC charge or complaint.  Rather, both the administrative charge and the complaint are "construed liberally," and a civil rights plaintiff "may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge."  *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630-631 (8th Cir. 2000) (noting that the "breadth of the civil suit is, therefore, as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination.") (internal quotations and citations omitted); *see also* Fed. R. Civ. P. 8(a) (setting forth the liberal notice pleading requirements of the Federal Rules of Civil Procedure).  Here, Stanina put Blandin on

notice that she was asserting a hostile work environment claim, and provided examples of conduct comprising her claim in both her EEOC charge and Federal Court complaint. Therefore, the Court denies Blandin's motion for summary judgment on this ground.

## III.    Retaliation Under Title VII And The MHRA

Stanina's retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997); *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 441-42 (Minn. 1983) (applying the *McDonnell Douglas* burden-shifting test to retaliation claims under the MHRA). Under this analysis, Stanina must first make out a prima facie case of retaliation. *McDonnell Douglas*, 411 U.S. at 792. Blandin can rebut this showing by stating a legitimate, non-discriminatory reason for its actions. *Id.* The burden then shifts back to Stanina to show that Blandin's reason for its actions was actually a pretext for discrimination. *Id.* To establish a prima facie case of retaliation, Stanina must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection between the two. *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 713-14 (8th Cir. 2000). Stanina claims that Blandin's failure to recall her after her January 2003 layoff, when Blandin was recalling less-senior employees who had not filed discrimination charges, constituted unlawful retaliation for her filing of a charge with the EEOC.

Blandin raises two arguments in support of its motion for summary judgment on Stanina's retaliation claim. First, Blandin argues that her retaliation claim is barred

because she did not include this claim in an EEOC charge, and therefore failed to exhaust administrative remedies with respect to that claim. Claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are "reasonably related" to those that were filed with the agency. *Stuart*, 217 F.3d at 631. A claim of retaliation is reasonably related to an EEOC charge alleging discrimination claims if the retaliation allegedly resulted from the filing of the charge. *See Wentz v. Md. Cas. Co.*, 869 F.2d 1153, 1154 (8th Cir. 1989) (district court may hear retaliation claim when plaintiff is retaliated against for filing the EEOC charge that alleged only discrimination); *see also Foster v. Roberts Dairy Company, LLC*, 372 F. Supp. 2d 1165, 1173 (D. Neb. 2005) (same) (citing *Russell v. TG Mo. Corp.*, 340 F.3d 735, 748 (8th Cir. 2003); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 687 (2d Cir. 2001)).

Here, Stanina alleges that Blandin retaliated against her by failing to recall her after the layoff because she filed her charge with the EEOC. Therefore, Stanina's retaliation claim is "reasonably related" to her EEOC charge, and is not barred for failure exhaust administrative remedies.

Second, Blandin argues that Stanina's retaliation claim fails because she has not set forth a prima facie case of retaliation. To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in protected activity; (2) the employer took adverse employment action against her; and (3) the adverse action was causally linked to the protected activity. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Eliserio v. USW, Local 310*, 398 F.3d 1071, 1078 (8th Cir. 2005).

Here, the first two elements of a prima facie retaliation claim are clearly met: Stanina engaged in protected conduct by filing a charge with the EEOC, and suffered an adverse employment action when she was not recalled after the layoff in accordance with the collective bargaining agreement.  With respect to the third element, Stanina alleges that Blandin failed to recall her for work, while it was recalling similarly-situated, but less senior men who had not filed charges with the EEOC.  Viewing the facts in the light most favorable to Stanina, as the Court must on Blandin's motion for summary judgment, the Court finds that Stanina has set forth a prima facie case.  Notably, evidence that Stanina was not recalled for work, but that less-senior employees who had not engaged in protected activity had been recalled for work, is sufficient to establish a "causal connection" between Stanina's filing of an EEOC charge and Blandin's failure to recall her.[3]  Therefore, the Court denies Blandin's motion for summary judgment on this ground.

## IV.    Disparate Treatment Under Title VII And The MHRA

Claims of disparate treatment are also analyzed under the *McDonnell Douglas* burden-shifting test.  *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000); *Hubbard*, 330

---

[3] Although Blandin limited its argument here to Stanina's prima facie case, the Court notes that even if Blandin had proceeded with the burden-shifting analysis and offered a legitimate, nondiscriminatory reason for its failure to recall her, Stanina's evidence that similarly-situated but less-senior employees who did not engage in protected activity were recalled to work before she was, would also be highly relevant to a finding of pretext.  *See Ordahl v. Forward Tech. Indus., Inc.*, 301 F. Supp. 2d 1022, 1029 (D. Minn. 2004) ("Evidence relevant to a finding of pretext might include that similarly situated unimpaired employees were treated differently, the employer's treatment of the employee during his employment, or the employer's general policy and practice regarding disabled employees.") (citing *McDonnell Douglas*, 411 U.S. at 804).

N.W.2d at 441-42 (Minn. 1983) (applying the *McDonnell Douglas* burden-shifting test to claims under the MHRA).  To establish a prima facie case of disparate treatment, Stanina must show that: (1) she is in a protected class; (2) she was meeting Blandin's legitimate job expectations; (3) she suffered an adverse employment action; and (4) a similarly-situated employee outside the protected class was treated more favorably.  *Clark*, 218 F.3d at 918.  Stanina asserts that she suffered disparate treatment on account of her gender when Blandin failed to recall her after her January 2003 layoff, when Blandin was recalling less-senior male employees.

Blandin seeks summary judgment on Stanina's disparate treatment, arguing that her disparate treatment claim is barred because she did not include this claim in an EEOC charge, and therefore failed to exhaust administrative remedies with respect to that claim. As set forth above, a plaintiff "may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Stuart*, 217 F.3d at 631.  In Stanina's EEOC charge, she alleged a widespread pattern and practice of harassment and disparate treatment based on her gender.  The allegations underlying Stanina's disparate treatment claim – that Blandin failed to recall her to work after the layoff, when it was recalling similarly-situated but less-senior male employees – occurred after Stanina filed her EEOC charge, and are simply another example of the type of treatment Stanina alleges has been occurring at Blandin over the past ten years.  Therefore, the Court finds that Stanina's disparate treatment claim "grows out of or is like or reasonably related" to her EEOC charge, and is not barred for failure exhaust administrative remedies.

**V.     Motion To Strike**

Blandin moves to strike declarations of Stanina and her co-workers from the record, arguing that they are conclusory, hearsay, that they lack foundation, or that they were not produced in response to Blandin's discovery request for "witness statements."

The Court denies Blandin's motion to strike.  The portions of the declarations that Blandin finds objectionable include declarants' statements that Stanina was treated differently and was harassed because she is a woman, as well as specific examples of such treatment.  Blandin's objections to the declarations are really based on Blandin's disagreement with the factual content of the declarations, as well as the weight Blandin thinks should be accorded to the declarations.  However, these are questions of fact that must be resolved by a jury, and provide no reason to strike the declarations at this time.  Finally, to the extent Blandin argues that one of the declarations should be stricken because it was not timely produced, the Court notes that any drafts of the declaration would likely have been protected by the attorney work-product privilege until they were filed, and further, that Blandin does not claim to have suffered any prejudice as a result of the timing.

Once the pending discovery matter is resolved, the Court will be place this case on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

     1.     Defendants' Motion for Summary Judgment [Docket No. 17] is **DENIED**;

     2.     Defendants' Motion to Strike [Docket No. 31] is **DENIED**; and

     3.     The parties' Joint Motion for Leave to File Excess Pages [Docket No. 24] is

**GRANTED**.


DATED:    July 26, 2006                  s/ John R. Tunheim
at Minneapolis, Minnesota.             JOHN R. TUNHEIM
                              United States District Judge